Buffandeau *v.* Edmondson.

## BUFFANDEAU *v.* EDMONDSON.

WHERE a Sheriff has levied on and is about to sell property of an execution debtor, and the defendant in execution obtains from the Court in which the judgment was rendered an injunction restraining the plaintiff in the judgment, his servants, etc., from proceeding to sell under such execution, and this injunction is served upon the Sheriff, who in defiance of it afterwards makes the sale, he is a naked trespasser, and liable in damages—even though he be not a party to the injunction suit.

*Query:* Whether the Sheriff could set up in defense that the property was justly subject to plaintiff's debts and has been so applied?

*Query :* Whether a Sheriff in such case be a necessary party to the injunction ? But if so, he is a merely formal party, and the failure to include him in the suit does not absolve him from the duty of obeying the injunction, if he be notified of it.

The provision of law punishing the Sheriff for acting in defiance of an order of Court, is more for the sake of the public, than the redress of the private grievance involved in such delinquency.

APPEAL from the Third District.

Trespass against a Sheriff for $5000 damages, for proceeding to sell plaintiff's property under execution after service of an injunction restraining such sale.

On the fifth of August, 1854, Daniel New obtained a judgment in the late Superior Court of the city of San Francisco against the appellant, Buffandeau—which judgment, by operation of law, was transferred to the Fourth District Court. Subsequently, Buffandeau filed his petition for the benefit of the insolvent law of this State, and after due proceedings had, he was on the first day of November, 1857, by a decree of the County Court of Alameda county, discharged from this judgment debt, and from all "judicial proceedings relative to the same." In May, 1858, New caused an execution to issue upon his judgment ; and Edmondson, the respondent, and Sheriff of Alameda county, levied it on the second day of June, 1858, upon one hundred and seventy-five head of cattle, the property of Buffandeau, and acquired by him after his discharge in insolvency. The Sheriff advertised that he would sell the cattle on the seventeenth day of June, 1858. Buffandeau, to prevent the sale, filed his bill June 16th, 1858, in the Fourth District Court for an injunction against New to restrain him, his agents, etc., from proceeding to sell under the execution.

The injunction was granted the same day, and a copy of it and the complaint was served upon the Sheriff before the sale, he admitting personal service of both. Disregarding the injunction, the Sheriff sold the cattle on the twenty-eighth day of June, 1858, and applied the proceeds to the satisfaction of the New judgment.

The answer, in addition to relying on the execution, sets up, in substance, that the insolvent proceedings of plaintiff were fraudulent as against creditors, and taken for the purpose of defeating

this defendant in the collection of his judgment; that plaintiff's schedule omitted property and money then owned by plaintiff, and particularly most of the cattle sold by the defendant on execution; that defendant was ordered by the Fourth District Court to show cause why he should not be punished for contempt in disobeying the injunction, and cause being shown, was discharged.

On the trial, plaintiff after offering in evidence a stipulation, admitting the recovery of judgment by New against plaintiff, issuing execution thereon, levy and sale by the Sheriff, service of the injunction, and the proceedings in contempt in the Fourth District Court, as above stated, then offered and read in evidence all of plaintiff's proceedings in insolvency—defendant objecting to the orders, notices, etc., on various grounds. It was then agreed that plaintiff had suffered damages in the sum of $3000, for which the jury were to return a verdict, if the plaintiff was entitled to recover at all. Plaintiff rested; and defendant moved for a nonsuit, which was granted, and judgment rendered for defendant for costs.

Plaintiff appeals.

*Holladay & Cary*, for Appellant.

I.   Even if the Sheriff had a right to take the cattle, notwithstanding plaintiff's discharge in insolvency, still he had no right to sell after service of the injunction, and such sale was an unlawful conversion. (*Chapman* v. *Thornburgh, infra.*) The Sheriff in this case is not within the rule by which an officer is excused for serving a process issued by a Court having jurisdiction, and legal on its face, because he knew, or at least, had ample and legal notice that the execution was founded on a discharged judgment. He was no more justified in selling these cattle after the service of the injunction, than he would have been had the appellant exhibited to him a supersedeas of the execution. (6 Bacon, Supersedas, G. & H. 426-8; *Hoit* v. *Hook*, 14 Mass. 210; Com. Dig., Imprisonment, H. 9; *Kuhm* v. *North*, 10 Serg. & R. 399; *Cooper et al., Assignees of Wm. Johns*, v. *Sheriff of London*, 1 Burrow, 20; 1 Taunton, 273; 1 Term. 481; *Taffts* v. *Manlove*, 14 Cal. 47; Act for relief of Insolvents.)

II.   We do not admit that this action is brought to recover dam-

ages for violating an injunction. We claim that the Sheriff is liable for selling the cattle after the service of the injunction, not simply because he violated it, but because his acts under the execution, by reason of the injunction, became unlawful. He had notice of the rights of the plaintiff, which he was bound to respect. To say that an action of this character cannot be maintained, because it is brought for violating an order of Court, is to say that no action can be maintained against a Sheriff who commits an injury with a legal process in his hands. But admitting that the action is brought to recover damages for violating the injunction, it does not follow that it cannot be maintained, and that the only redress for the wrong is by punishing the violation as for contempt. That is a proceeding for the protection of the Court whose process has been disregarded, but where is the remedy for the party whose property has been sacrificed? It is a contempt to disobey a subpœna, and can be punished as such, yet the party can have his action against the witness for any damages sustained by reason of his failure to attend as commanded. The refusal to obey a subpœna is as much a violation of a public right as the violation of an injunction, and it does not follow that because an act violates a public right, therefore a private party who may be injured by the act is without remedy. It is not true that a party who violates an injunction issued for the protection of a private right commits a public wrong which merges all private right to redress. It is mere play of words to say he violates a public and not a private right.

III. The Sheriff was not a necessary party to the injunction suit. (Calvert on Parties, 1–11 ; Pr. Act, sec. 13.) He had no interest in the suit; was the mere agent of New, the defendant therein.

IV. Injunction was a proper remedy, even if the motion would have sufficed, as is said in *Imlay* v. *Carpentier* (14 Cal.) ; and the Sheriff was bound to obey it. (4 Sandf. 156, 639 ; 2 Edw. Ch. 188 ; 1 Eden on Inj. 602–3 ; Drury on Inj. 399–407 ; Barb. Ch. Pr. 636.)

*B. S. Brooks*, for Respondent.

I. No action for damages for the violation of an injunction **or**

other order of Court lies in favor of the plaintiff in the suit in which it issues, or any other private person. ( *Costigan* v. *The Mohawk & Hudson R. R. Co.*, 2 Denio, 610 ; *Dent* v. *Basham*, 25 Eng. L. & E. 463 ; 26 Id. 478 ; *Port* v. *Neape*, 3 Caines, 22 ; *Emerson* v. *Larkly*, 2 Henry Blac. 248 ; *Fry* v. *Malcolm*, 4 Taunt. 705 ; *Smith* v. *Whatley*, 2 Bos. & Pul. 484 ; *Wentworth* v. *Bullew*, 9 B. &. C. 840.)

II.    The Sheriff is bound to execute a writ of execution, regular on its face, issued from a competent Court, notwithstanding he has notice of a discharge in insolvency.    (11 Johns. 158.)

III.    An injunction issued in one cause is not a supersedeas of an execution issued in another cause.    Nor can an injunction issue against a Sheriff to stay his action on a writ.    Nor can it issue against one not a party to the suit ; ánd the Sheriff here was not a party.    ( *Iverson* v. *Harris*, 7 Ves. 237 ; *Montague* v. *Hill*, 4 Russ. 128 ; *Bloomfield* v. *Snowdon*, 2 Paige, 355 ; *Waller* v. *Harris*, 7 Id. 173 ; *Sage* v. *Ognay*, 1 Clarke, 347 ; 1 Eden, 15 ; Story's Eq. 875, *et seq.* ; 2 Eden 377–2, and note 3 ; 4 Johns. Ch. 25 ; 9 How. Pr. R. 426 ; 1 Johns. 551 ; 1 Doug. 390 ; 11 Vt. 643 ; R. M. Charlton, 298 ; Hardin, 96 ; 3 Barb. 534 ; 4 Conn. 375 ; 15 Johns. 141 ; 5 Wend. 154 ; 3 Blac. Com. Ch. 25, 405 ; 17 Johns. 487 ; Graham's Practice, 450 ; 1 Johns. 531 ; 4 Id. 191 ; 1 Bac. Abr. 308, title, Auditor Querela ; 13 Price, 316 ; *Imlay* v. *Carpentier*, 14 Cal. 173 ; Id. 138 ; 9 Johns. 65 ; 17 Id. 34 ; 11 Id. 197 ; 1 Cow. 21 ; 7 Id. 412 ; Id. 417 ; 1 Wend. 81.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This was a suit brought against the defendant, Sheriff of Alameda county, for proceeding to sell property of plaintiff, which the defendant had levied on by virtue of an execution ; the plaintiff claiming that before the sale an injunction had issued at the suit of the plaintiff enjoining such sale.    The complaint also avers, that the plaintiff had been discharged from the debt on which the execution issued, by virtue of certain insolvent proceedings.    Upon the trial, a nonsuit was ordered.    The bill on which the injunction was granted was filed by plaintiff against one New, and the injunction

Buffandeau *v.* Edmondson.

restrained, by its terms, New, his agents and servants, from proceeding to sell under the execution. A copy of the injunction and of the complaint was served upon the Sheriff before the sale, but he proceeded, nevertheless, to make the sale.

It is unnecessary to consider whether the bill of complaint showed a proper case for an injunction, or whether the injunction was regularly granted or not. It was enough for the Sheriff to know that a Court of competent jurisdiction had made the order, and then it became his duty to obey it. It is no part of a Sheriff's duty to sit in judgment upon judicial acts, and reform the errors or revise the orders of the Judge. As the execution is only an order of the Court, it would be strange if the Sheriff were held under onerous penalties to obey its commands, and yet be absolved from the duty of yielding obedience to an order made directly by the Judge, touching the same subject matter. The injunction, so long as it remained in force, operated as a supersedeas to the execution; the legal authority to sell the property was withdrawn by the same authority which had given it, to wit: by the act of a competent Court; and the Sheriff had no more legal justification for his act than if he had proceeded to sell after the execution had been quashed. The injunction in this case had direct effect upon the process itself, and though, in order to charge the Sheriff, it was necessary that he should have notice of the order, yet after such notice, his act was in defiance of law, and in contempt of the Court. It is true, that for such conduct the law has provided a remedy, by the punishment of the offender; but this provision is more for the sake of the public than for the redress of the private grievance involved in such delinquency. As the only authority of the Sheriff to levy and sell came from the execution, and as the injunction superseded the execution and withdrew the authority, it follows that the Sheriff is no better protected than if he were a naked trespasser.

It is said that the Sheriff was not made a formal party to the bill of complaint in the injunction suit, and therefore was not bound to obey the writ. Being a mere ministerial officer, with no interest in the subject of controversy, and acting in the execution of the process as the agent of the plaintiff in the writ, we are by no means.

29

convinced that he was a necessary party to the proceeding.    But if he were, he was a mere formal party, and the failure to include him by name did not absolve him from the duty of obeying the order when notified of it.    If, on petition, a supersedeas had issued, or an order for a stay of the execution had, or an order quashing it had been made, no doubt can exist that the order would be effectual without any previous notice to the Sheriff, or his having been made a party, and we see no difference in principle in this respect between an order in equity of this character and one at law.    In Story's Equity Pleadings (sec. 229) it is said : " The misjoinder of a mere nominal or formal party will often be dispensed with, if entire justice can be done without him.    Indeed, the joinder or misjoinder of nominal or formal parties will not ordinarily be allowed by the Court as a valid objection to proceedings under the bill."    And again, (sec. 231) " In the next place, no person should be made a party who has no interest in the suit, and against whom, if brought to a hearing, no decree can be had.    Upon this ground it is that a person who is a mere agent in the transaction ought not to be made a party to a bill ; as, for example, an auctioneer who has sold an estate, the sale being the matter in controversy ; or a steward or receiver of the rents and profits, where the controversy is between the vendor and vendee to a bill for a specific performance ; or an attorney or solictor who has negotiated an annuity to a bill to set it aside, on account of a defective memorial ; or an arbitrator to a bill to enforce or to set aside an award."

It is said that no precedent can be found for such an action as this against an officer for disobedience of the order of the Court, and this is urged as persuasive of the conclusion that it is not maintainable.    Several cases are cited which are not analogous in fact or principle.    It would present a strange anomaly in jurisprudence if a public officer could convert property when he was expressly inhibited by the law from taking it, and claim protection from legal responsibility by showing an execution which had been legally superseded.    The principle is familiar enough to need no citation of authority, that a Sheriff cannot seize or sell the property of a citizen, unless he has legal process authorizing it ; and that process which has been superseded is no authority at all when the officer

is duly notified of the order of supersedeas.  Many technical points have been taken by the respondents, but there is nothing in any of them worthy of further examination.

It is not necessary to consider the effect of the insolvent proceedings, for independent of this ground, the plaintiff was entitled, upon the case made, to judgment.  If the Sheriff, without legal authority, converted the plaintiff's property, *prima facie* he is responsible to the plaintiff for at least its value ; and if he has any defense arising from the fact that the property was justly subject to the plaintiff's debts, and has been so applied, it will be time enough to inquire whether this is properly in mitigation of damages, when the defense is made and the facts presented.  We intimate no opinion now upon the subject.

Judgment reversed and cause remanded.